El Paso Electric Railway Company v. S. E. Adkins.

Decided May 26, 1909.

**1.—Personal Injuries—Street Cars—Contributory Negligence—Evidence.**

In a suit for damages for personal injuries caused by being struck by a street car while plaintiff was hindered by passing vehicles and stood temporarily on the car track, evidence considered and held to raise an issue of fact as to whether or not plaintiff was guilty of contributory negligence, and to require the submission of the issue to the jury.

**2.—Same—Cases Distinguished.**

Galveston, H. & S. A. Ry. Co. v. Ryon, 80 Texas, 59; Sanches v. San Antonio & A. P. Ry., 88 Texas, 117; Sabine & E. T. Ry. v. Dean, 76 Texas, 73; Texas & N. O. Ry. v. Brown, 2 Texas Civ. App., 281; Bennett v. St. Louis S. W. & Tex. Ry., 36 Texas Civ. App., 459; International & G. N. Ry. v. Edwards, 100 Texas, 23; San Ant. Traction Co. v. Kelleher, 48 Texas Civ. App., 421, and Houston & T. C. Ry. v. Kauffmann, 46 Texas Civ. App., 72, distinguished.

**3.—Negligence—Common Law.**

Whether or not a street railway company was guilty of negligence in the manner in which it operated its cars at a certain time and place may be a question of fact for the jury though there was no ordinance regulating the speed of the cars.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Leigh Clark* and *Nagle & Scott* (*Baker, Botts, Parker & Garwood,* of counsel), for appellant.—The uncontroverted evidence showed that plaintiff's own negligence was the proximate cause of his being struck by the car, and the court should have instructed the jury to return a verdict for defendant. San Antonio Traction Co. v. Kelleher, 107 S. W., 64; Houston & T. C. Ry. Co. v. Kauffmann, 101 S. W., 817; International & G. N. Ry. Co. v. Edwards (Sup. Ct.), 93 S. W., 106; Bennett v. St. Louis S. W. Ry. Co., 82 S. W., 333; Sanchez v. San Antonio & A. P. Ry. Co. (Sup. Ct.), 30 S. W., 431; Sanchez v. San Antonio & A. P. Ry. Co., 27 S. W., 922; Texas & N. O. Ry. Co. v. Brown, 21 S. W., 424; Galveston, H. & S. A. Ry. Co. v. Ryon (Sup. Ct.), 15 S. W., 588; Sabine & E. Texas Ry. Co. v. Dean (Sup. Ct.), 13 S. W., 45.

The verdict of the jury in favor of plaintiff being contrary to the evidence in that the undisputed evidence showed that the plaintiff was guilty of contributory negligence in going or standing upon the street-car track in front of an approaching car without looking or listening for the approach of cars, and in the manner that he went upon the track or stood thereon, the court should have set said verdict aside and have granted the defendant a new trial as prayed. Gulf, W. T. & P. Ry. Co. v. Smith, 83 S. W., 719; Gulf, C. & S. F. Ry. Co. v. Wilson, 59 S. W., 589; International & G. N. Ry. Co. v. Arias, 30 S. W., 446.

The court erred in the following portion of its charge:

"You are instructed that the defendant street-car company has and had in common with the general public the right to use said Alameda Street for the purpose of operating cars thereon, but had no superior right to the use of the street, or that portion over which the railway track lies and the cars run, to that of other persons traveling along or

across same, but the rights of all persons, including the street-car company, to the use of the street are co-equal, and all persons, no matter in what way they may be using the street, are required to use ordinary care to prevent injury to themselves, and to avoid injury to other persons thereon. . . ." Traction Co. v. Kelleher, 107 S. W., 64.

*Patterson & Wallace,* for appellee.—The court did not err in refusing to give defendant's special charge, for the reason that under the evidence the issue of plaintiff's contributory negligence was purely an issue of fact to be passed upon by the jury. Gulf, etc., Ry. Co. v. Matthews, 88 S. W., 192; El Paso Electric Railway Co. v. Kendall, 78 S. W., 1081; San Antonio Traction Co. v. Haines, 100 S. W., 789; Gulf, etc., Ry. Co. v. Anderson, 13 S. W., 197; San Antonio & A. P. Ry. Co. v. Connell, 66 S. W., 246; North Texas Traction Co. v. Thompson, 95 S. W., 709; Missouri Pac. Ry. Co. v. Lee, 70 Texas, 496.

JAMES, CHIEF JUSTICE.—Appellee was struck by appellant's car in the city of El Paso, and sued, alleging that while plaintiff was in the exercise of due care attempting to cross the street over the defendant's track, he was struck on account of the negligence of defendant's servants in these respects: First, that the car was being run at a negligent and reckless speed without keeping a careful lookout ahead and without signals to warn persons of its approach and without having it under any control; second, that the car was being operated by a green, inexperienced and incompetent motorman, in which defendant was negligent, and in violation of the rule, regulation, order or bulletin of defendant, which in substance required cars approaching such place to be operated at a speed not exceeding five miles an hour; third, that the motorman discovered plaintiff on defendant's track in time to have avoided striking him, and no effort was made to stop or check the car although he saw plaintiff and appreciated his danger in time to have avoided the accident thereby. The answer was a general denial and a plea of contributory negligence. The issue of discovered peril was not submitted nor asked to be. Plaintiff relied and now relies solely on plaintiff's right to the recovery on account of the negligence of the defendant, of which, we may here state, the proof was sufficient.

The first and second assignments of error complain of the failure to give defendant a peremptory instruction and of the failure to grant a new trial, for the reason that the undisputed evidence established plaintiff's contributory negligence as causing or contributing to his injury. This involves an understanding of the testimony.

These facts appear from plaintiff's own statement: It was on the morning of an election day in El Paso, and the accident took place in Alameda Street in front of his voting place. He lived some ten or twelve blocks away and had come there to vote. After voting he undertook to go to the other side of the street to a grocery store to use a telephone. He says: "In attempting to cross the track (defendant's track which ran along the street) it was blocked by the traction engine of Mr. Caples that hauls gravel down the track, and I remember standing there looking at this engine for a few seconds, and the next thing I knew was back in the bedroom there. I don't know how I

got there or anything about it. . . . I don't remember noticing the traction engine until I stepped down on the track or near the track; this engine was passing. I remember looking up and looking at the engine pass, you know—the last thing I remember was to look back to see how many cars it had. I don't remember anything else at all until after. . . . I was looking at the traction engine; I could not have very well passed around until the engine got by me. I was looking to see how many cars it had, with the object of going around behind it, you know. It was going east. I judge I was standing on the track fifteen or twenty seconds—maybe thirty—before the car struck me; maybe half a minute, I don't know. There was nothing to call my attention to it. I did not hear any signal from the street car. I don't know a thing about it only what I have been told since. . . . During that time (the time he was standing on the track) I don't remember looking up or down the track. I was looking at the traction engine there hauling gravel. It was going east toward Ysleta. The street car was running west. The engines were loaded with gravel and I was looking at these. The engines were four or five feet from the street-car track, about as close as they dare run—maybe six, something like that. I don't remember seeing the wagons before I got on the track; I paid no attention to them. I walked out of the voting place to go across the street; some one called my attention at the corner of the building; I went there and talked to some fellows a few minutes and started over across to the store a few minutes after I got out of the voting place. I started from the northeast corner of the building; I judge I was ten feet from the corner (meaning the corner of Alameda Street and Stevens Street intersecting it). I went down the front porch by the front steps. I judge the street-car track is about five feet from the north edge of this porch. I started across for the purpose of telephoning. I was intending to go in a northwesterly direction when I left the house. When I got on the street-car track I saw this traction engine and cars, and stopped. I can not say whether I was on or near the track; I don't know whether I was in the middle of the track or on the edge of it. I don't remember Mr. Shobe or Mr. McNelly hollering at me. This occurred about 9 o'clock in the forenoon. . . . I have had occasion to ride frequently on the Washington Park line (which this was). I knew that cars ran up and down that street—Alameda Street."

The witnesses for plaintiff testified to the same general facts, but more in detail. From their testimony the situation is more clearly developed. Stevens Street intersected Alameda Street just east of the polling place, which was on the south side of Alameda Street. Alameda runs east and west and Stevens north and south. Adkins was standing upon the track looking northwesterly across the street. The car that struck him was going westwardly, so that he was not facing it. The gravel wagons were going east, were in his way and prevented his crossing over for the time being, and he was standing there waiting for them to pass. The gravel train made considerable noise, which probably prevented plaintiff from hearing Shobe and McNelly, who tried to warn him, and any signals from the car, if any were given. The street appears to have been straight, and from a position on the

track the approaching car could doubtless have been seen for a considerable distance. From the porch from which plaintiff started it was visible to a man standing up for over a hundred feet, there being some trees in the way. It was while Shobe was near the porch that he saw the car about ninety feet away.

Other uncontroverted facts appear which are relevant to the issue of plaintiff's negligence. Defendant's rule, bulletin or instruction was to slow up going across Stevens Street, and have the car under control, to watch out for vehicles, etc., on this street; and it appeared that the crossing was dangerous by reason of buildings on the east side of Stevens Street and also on account of the track being so close to the south side of Alameda Street and a brewery garden at this place. It was testified to by Shobe: "In front of my place is a regular stopping place for any one that wants to get off or on there. They had a board sign nailed to the electric post there, that the cars stopped there. The meaning of that was that the cars stopped there provided any one wanted to get off or on, just the same as they do on street corners here in the city. They don't always stop at street corners unless someone wants to get off or on. It is the same way down there."

The case, as it is made to appear by appellant, is one of a man of mature years stationing himself upon a street railway track and lingering there when he need not have done so, allowing himself to be absorbed in other matters and not paying any attention whatever to the approach of cars that were liable at any time to be passing over the track. And this without any showing of excusing or justifying circumstances tending to make his inattention consistent with ordinary care.

Upon the above state of facts we held in the original opinion that plaintiff was guilty of contributory negligence, reversing the judgment and rendering one in favor of the railway company. With this disposition of the case we are not satisfied, and therefore grant the motion for rehearing.

The case of Galveston, H. & S. A. Ry. v. Ryon, 80 Texas, 59, cited by appellant, does not apply to the facts of this case, that being the case of a trespasser.

The cases of Sanches v. San Antonio & A. P. Ry., 88 Texas, 117; Sabine & E. T. Ry. v. Dean, 76 Texas, 73; Texas & N. O. Ry. v. Brown, 2 Texas Civ. App., 281; Bennett v. St. Louis S. W. Ry., 36 Texas Civ. App., 459; International & G. N. Ry. v. Edwards, 100 Texas, 23, were cases in which it appears that the injured person stepped upon the track directly in front of the moving engine or train in plain view.

The case of San Antonio Traction Co. v. Kelleher, 48 Texas Civ. App., 421, was one in which it appeared from plaintiff's own statement that while he was walking upon the track in the street he had thrown all caution to the winds. This Kelleher case seems to be appellant's main reliance, because it involved an injury in the street of a city; but in the present case the plaintiff's testimony did not show that he had abandoned all sense of care. In Houston & T. C. Ry. v. Kaufman, 46 Texas Civ. App., 72, it was not certain that Kaufman stepped immediately in front of the engine. The opinion of Court of Civil

Appeals states: "The undisputed evidence leads irresistibly to one of two conclusions: either that Kaufman went upon the crossing and remained there in plain view and hearing of the approaching engine until he was struck, or that he stepped upon the track immediately in front of and in plain view and hearing of the engine and was thus struck and killed, in either case without the slightest precaution to ascertain the presence of the approaching train then in plain view. It is stated in appellee's opinion, in explanation of Kaufman's action in remaining on the track, that just as he was crossing said railroad track it became necessary for him to stop a moment on one of said tracks, which he did, to let a certain train pass, and while so pausing he was struck by the tender. There is nothing in the evidence which remotely suggests that it was necessary for him to stop on the track. The statement removes any suggestion which could possibly be sustained that his stopping on the track was other than voluntary on his part." In the present case it is clear that plaintiff's pausing upon the track was not voluntary. None of these authorities require us to pronounce plaintiff guilty of negligent conduct as a matter of law.

These are facts developed by the testimony: Adkins lived in El Paso, had used the street cars and was presumably acquainted with the fact that these cars customarily stopped at corners to take on or let off passengers. After voting he stepped from the porch and proceeded shortly after to cross the street and railway track. A person standing upon the gallery could not see down the track further than about one hundred feet in the direction from which this car came, owing to some trees. When Adkins stepped from the gallery the car had not reached this point, because he was seen standing upon the track when the car was observed by Shobe at about that distance from the gallery. He stepped upon the track when the car must have been considerably more than a hundred feet away and beyond the intersecting street. It is clear, therefore, that he did not step immediately in front of the car, which removes this from that class of cases. His contributory negligence as a matter of law must be ascertained in some other respect. It appears, however, that when he stepped upon the track he did not look for any car, and while he stood there waiting for the gravel wagons to pass he did not look in the direction this car came from, and as he was standing there, so waiting, he was run into by this car. It is in reference to this conduct that he would have to be pronounced guilty of contributory negligence as a matter of law. The question to be answered is, Was his action, under existing circumstances, clearly the conduct of an imprudent person? If so, it unquestionably contributed to his injury.

We believe that a person, although he has the right to use a street-car track as a part of the street for crossing or other purposes, can not station himself upon the track and remain there heedless until he is struck by passing cars, and claim that he was in the exercise of care. We understand, however, that in all the cases where the court has undertaken to declare the conduct of the party negligent, it was conduct into which reasonably justifying circumstances did not enter—conduct which reasonable minds would all agree was not the act of a prudent person under the circumstances.

The plaintiff in this case was in the act of crossing the track to go over the street to use a telephone. But for being interrupted by the string of gravel wagons which were in his way he would have crossed in safety. His pausing on the track was not a voluntary act of his, but one necessitated by what was in the street in front of him. He was reasonably prosecuting the act of crossing the street, and was temporarily hindered and stopped on this track by an obstruction that would naturally consume but little time in passing. Still, his injury would doubtless have been avoided had he looked for this car, or by his stepping back into the street. The question is whether or not, by doing neither, he acted as an ordinary prudent person would have done under the conditions surrounding him.

In approaching and going upon an ordinary railroad crossing, we can see some reason for holding that a person struck in making the crossing should, in the exercise of ordinary care, look for approaching cars. When a person is struck at a crossing the engine or train must be dangerously near him, because it requires no time to effect the act of crossing. Such cases are generally, after all, cases of a person going upon the track immediately in front of an approaching engine or train in open view. And if a person should, for cause, remain upon the track at a road crossing the duty, in the exercise of care, to look for an approaching engine might be said to be more or less imperative in view of the fact that trains may be expected to pass at any moment and at any rate of speed, for the statute, circumstances or custom does not undertake to regulate the speed of trains at road crossings.

Here the car was not near plaintiff when he stepped upon the track, nor even after he stepped upon it, according to some of the evidence. But for the excessive speed of this car it in all probability would not have come dangerously near him during the time it took the three or four gravel wagons to pass. We are unable to say that by pausing on this track the short time necessary for the wagons to pass, without noticing for the approach of cars running at a speed not to be expected, was what no ordinarily prudent person would have done. This would be requiring a person to anticipate and to act upon the theory that cars would be negligently operated. Hence we conclude that the matter was one for the jury. See Rio Grande, S. M. & P. Ry. v. Martinez, 39 Texas Civ. App., 460.

The third assignment of error is overruled. The charge it complains of was correct.

Under the fourth and fifth the first proposition advanced is overruled. The second is that the evidence conclusively showed that if signals had been sounded on the car plaintiff could not have heard them, and therefore such issue of negligence should not have been submitted.

The testimony which is relied on for this is that of Shobe, who was upon the porch, as follows: "If the whistle or gong was sounded, there was so much noise from that train of wagons I could not have heard it, and I don't remember hearing it. If they had sounded the gong or blown the whistle you would have had to be listening to hear it. The wagon train made more noise than the whistle would make." That when he saw the car coming he and others hallooed to Adkins

pretty loud to look out several times, and Adkins stepped back to the south edge of the track, about which time he was struck. McNelly testified: "Mr. Shobe hallooed to him, 'Look out,' about the same time I hallooed 'look out' myself, but the car struck him and turned him over." We may here remark, in passing, that if this hallooing took place when Shobe first saw the car coming, some idea of the rapidity at which the car must have been running may be gained. The car ran ninety feet after he was struck. However, Shobe's testimony as to whether or not the signals could have been heard was evidently opinion (he says that the signals could have been heard if one were listening), and appellant has overlooked the opinions of other witnesses who were in the same position as Shobe. McNelly testified that he thought he was in a position to have heard these signals if they had been sounded, and Taylor testified that it looked as if he would have heard such signals if there had been any. We therefore consider that it was not conclusively shown that the signals could not have been heard by Adkins if given.

The third proposition is that the evidence was wholly insufficient to raise the issue of negligence in connection with the omission to ring the bell or sound the whistle. There was no proof of any ordinance requiring such signals to be given, consequently the failure to do so was not negligence *per se*. But there was evidence of the dangerous character of this place in the operation of the railway. The failure to give the signals was pleaded by plaintiff as negligence proximately contributing to plaintiff's injury, and whether this was so or not under the conditions that existed at the place was properly a question to submit to the jury. (Missouri, K. & T. Ry. v. Snowden, 44 Texas Civ. App., 509.) This leads to our overruling also the seventh assignment.

We overrule the sixth. The evidence was sufficient to require the submission of the matter of negligence in respect to the speed of the car.

We are unable to declare the verdict excessive, the former judgment of this court is set aside and former opinion withdrawn, and the judgment affirmed.

*Affirmed.*

Writ of error refused.