## W. E. Watson et al. v. John P. Watson et al.

### Decided May 24, 1899.

**Will—Construction—Power Conferred.**

Where a husband devised to his wife all his property for her life, with full power to dispose of the same by will or by deed to take effect after her death, expressing the desire that she keep the property intact for life and leave the same by will or otherwise to whichever of the testator's sons are best and kindest to her during her lifetime, or divide it as she may deem best, she may dispose of such property in accordance with the provisions of the will, and does not take a mere life estate without such power of disposal.

APPEAL from Washington. Tried below before Hon. EDWARD R. SINKS.

*Searcy & Garrett* and *R. J. Swearingen,* for appellants.

*Thomas B. Botts* and *Beauregard Bryan,* for appellees.

JAMES, CHIEF JUSTICE.—This is a suit brought by W. E. Watson and others, the children and grandchildren of William Watson, deceased, by his first marriage, against Carrie J. Watson, the second wife and widow of William Watson, and the sons of said William and Carrie Watson, for the purpose of obtaining a construction of the will of William Watson and a judicial declaration of the rights and powers of the said Carrie Watson, and of the rights and interests of plaintiffs and defendants thereunder. The will was made a part of the petition and is as follows:

"Know all men by these presents, that I, William Watson, of Rosedale Nurseries, near Brenham, Texas, being of sound and disposing mind and memory, do make and publish this, my last will and testament, hereby revoking all wills by me at any time heretofore made.

"First. I direct that all my just debts shall be paid by my hereinafter named executrix, as soon after my decease as shall be by her found convenient.

"Second. All of the property of every kind and description now owned by me is community between myself and my wife, Carrie J. Watson, and I do hereby will, devise, and bequeath to my beloved wife, Carrie J. Watson, all property of every kind and description, whether real, personal, or mixed, of which I shall die seized and possessed, to have, hold, use, and enjoy same for and during her natural life, with full power and authority to her to devise and bequeath the same by will or otherwise, and especially the property known as Rosedale Nursery, as hereinafter set out.

"Third. It is my desire, wish, and will that my beloved wife shall keep the property known as Rosedale Nursery intact, during her life, using and enjoying the same free from the control of anyone, and that she leave same by will, or otherwise, to whichever of my sons are best and kindest to her during her life, or divide as she may deem best. She being my sole beneficiary, shall have the right, by will or otherwise, to dispose of said property, as above set out, but such will or other mode of conveyance not to become operative until after her death.

"Fourth. I hereby nominate and appoint my beloved wife, Carrie J. Watson, sole executrix of this my last will, and direct that no security be required of her as such executrix.

"Fifth. It is my will that no other action shall be had in the county court, in the administration of my estate, than to prove and record this will and to return an inventory.

"Sixth. I wish here to state that my reason for leaving all my estate to my wife is, that I have every reason to know her entire honesty and integrity, and as she has helped me to make and save all we have, it is only just and proper that she have all that is left after my death, with full power to dispose of same as set out in the foregoing paragraphs.

"Witness my hand, this August 16, 1897, in presence of C. B. Felder and W. Y. Yates, who attest at my request.

(Signed)      "WILLIAM WATSON."

The petition alleged plaintiffs' contention to be that under said will Carrie J. Watson took only a life estate in William Watson's property, and that at her death the same is to descend according to the law of descent and distribution; and the defendant's claim to be that she takes an absolute title to his estate, or a life interest therein with full power to dispose of the same at her death. It also alleges that Carrie J. Watson will attempt to dispose of said property in accordance with her ideas of the powers granted her under said will, and that the power and rights given to her by the will are doubtful and obscure.

To this petition defendants interposed general and special demurrers which the court sustained, and upon plaintiffs declining to amend, the suit was dismissed by the court, from which judgment the appeal is prosecuted.

The special demurrers in substance were, first, that there was no room for the construction of the will as contended for in the eighth paragraph of the petition, viz., that upon the death of Carrie J. Watson the property would descend to all the children and grandchildren of Watson according to the statute of descent and distribution; because (using the language of the demurrer) by the terms of the will the property is left to such of the sons of the testator as shall in the discretion of the sole beneficiary, Carrie J. Watson, be kindest and best to her in her lifetime, this power of disposition to be exercised by her in her lifetime, either by deed or will; and second, that paragraph 11 of the petition, alleging that the powers and rights given to Carrie J. Watson under the will are doubtful and obscure, should be stricken out, because the terms of the will are clear and the powers and rights conferred are specific and in no way doubtful or obscure, and do not require construction to make their meaning plain.

The district court does not indicate any particular ground for the judgment rendered. The general and special demurrers were all sustained, and it seems to us that by passing on them the court must have passed on the will in respect to the matters called attention to in the petition. In other words, the court must have considered the will and must have determined that it was not obscure or doubtful as to the powers and rights which it conferred on Mrs. Watson; and that instead of vesting Watson's estate in his children and grandchildren upon the death of Mrs. Watson according to the statute of descent and disctribution, the will gave the latter power to dispose of it to some or all of Watson's sons.

The action of the court in sustaining the demurrer was, we think, correct, and therefore the judgment is affirmed.

*Affirmed.*

Writ of error refused.