HOUSTON & TEXAS CENTRAL RAILROAD COMPANY V. OTTO KAUFF-MANN ET UX.

Decided April 9, 1907.

**1.—Railroad Crossing—Death—Negligence.**

In a suit by the parents for the death of their son at a much frequented crossing over the tracks of the defendant company in its yards, the son having been struck and run over by a backing locomotive, where it appeared from the evidence that defendant's employees operating the locomotive did nothing more, as they approached said crossing, than simply look ahead through the cab windows, although they knew that in that way they could not see the track within fifty feet of the end of the tender, the jury was justified in finding that said employees were guilty of negligence in failing to keep a reasonable lookout.

**2.—Same—Contributory Negligence.**

In a suit by parents for the death of their son under the circumstances stated in the foregoing paragraph, it further appearing from the undisputed evidence that the deceased was a man 23 years of age, of ordinary intelligence, in full possession of his faculties of sight and hearing; that the track was straight and level at the crossing; that there was nothing to obstruct a view of the approaching locomotive which was not running faster than four or five miles an hour, the conclusion is irresistible that the deceased was guilty of contributory negligence in failing to look and listen while crossing said tracks, and the court should have instructed a verdict for the defendant.

**3.—Same—Same—Ordinary Care.**

In the case of a person crossing the much used tracks of a railroad company in its yard the fact that the noise of a passing train drowned all other sounds, only emphasized the duty on the part of such a person, in the exercise of ordinary care, to use his sense of sight.

**4.—Resident Aliens—Right to Sue.**

The question of the right of resident aliens to maintain such a suit as the present one, in the absence of pleading and proof that resident citizens of this State would have such rights in the country of said aliens, not decided.

**5.—Verdict not Excessive.**

A verdict for $2,500 in favor of parents for the death of their son, held, not excessive.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Higgins & Wolters,* for appellant.—The right of action created by article 3017 (2899) and 3021 (2903), of the Revised Civil Statutes of Texas, for injuries resulting in death, in favor of surviving parents, does not extend to those who are nonresident aliens. Revised Civil Statutes of Texas, art. 3021 (2903); 3025 (3907); McMillan v. Spider Lake Saw Mill & Lumber Company, 60 L. R. A., 589-592; Brannigan v. Union Gold Mining Company (Circuit Court of Col.), 93 Fed. Rep., 164; Romano v. Capital City Brick & Pipe Co., 101 N. W. Rep., 437; 68 L. R. A., 132; Bonthron v. Phoenix L. & F. Co., 61 L. R. A., 563; Tanas v. Municipal Gas Co., 84 N. Y. Sup., 1058; St. Louis, I. M. & S. Ry. v. McCormick, 71 Texas, 667.

In no event could the nonresident alien take and enjoy rights of personal property in this State, except to such extent as a citizen of this State might be entitled to take and enjoy similar rights in the alien's country; and it would be incumbent on the alien complainant to plead and prove the necessary reciprocal facts and conditions, in order to recover. Revised Civil Statutes of Texas, art. 9; Deni v. Pennsylvania Railway Company, 181 Pa. St. Rep., 525; 37 Atl. Rep., 558; Cleveland R. R. Co. v. Osgood, 73 N. E. Rep., 285; 68 L. R. A., 132; 61 L. R. A., 563; St. Louis, I. M. & S. Ry. v. McCormick, 71 Texas, 667; De Ham v. Mex. Nat. R. R. Co., 86 Texas, 69.

A person in the full use of his senses of sight and hearing, who voluntarily enters and remains on a railroad track in open view of an approaching locomotive, without the actual knowledge of those operating same, and who is thereby injured, no other facts appearing to explain or excuse his conduct, must be held guilty of contributory

negligence precluding recovery.  Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Murray v. Gulf, C. & S. F. Ry. Co., 73 Texas, 7; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307; Galveston, H. & S. F. Ry. Co. v. Bracken, 59 Texas, 73; Hoover v. Texas & Pac. Ry. Co., 61 Texas, 504; Dallas & W. Ry. Co. v. Spicker, 61 Texas, 429; Missouri Pac. Ry. Co. v. Foreman, 73 Texas, 314; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 163; Houston & T. C. Ry. Co. v. Smith, 77 Texas, 181; Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 622; Wharton on Negligence, 426.

*Lovejoy & Parker*, for appellees.—Title 57 of our Revised Civil Statutes relating to "Injuries Resulting in Death—Actions For," inures to the benefit of aliens or nonresidents, the same as citizens or residents. Rev. Stat., art. 3017, subdivision 1, 3018, 3021, 3022, 3023, 3024, 3026 and 3027; 13 Enc. of Law and Procedure, p. 333; Bonthron v. Phoenix Light, Etc., Co. (1903), 71 Pac. Rep., 941; 61 L. R. A., 563; Szymanski v. Blumenthal,. 3 Pennew., 558; 52 Atl. Rep. 347; Augusta R. Co. v. Glover, 92 Ga., 132; 18 S. E. Rep., 406; Kellyville Coal Co. v. Petraytis, 63 N. E. Rep., 94; Jeffersonville, etc., R. Co. v. Hendricks, 41 Ind., 48; Cleveland Ry. v. Osgood, 73 N. E. Rep., 285; Romano v. C. C. B. & P. Co., 101 N. W. Rep., 437; Trotta's Adm'r v. Johnson, Briggs & Pitts, 90 S. W. Rep., 540; Mulhall v. Fallon, 176 Mass., 266; 57 N. E. Rep., 386; 79 Am. St. Rep., 309; 54 L. R. A., 934; Renlund v. Commodore Min. Co., 89 Minn., 41; 93 N. W. Rep., 1057; Philpott v. Missouri Pac. R. Co., 85 Mo., 164; Alfson v. Bush Co., 182 N. Y., 393; 75 N. E. Rep., 230; Tanas v. Municipal Gas Co., 84 N. Y. Sup., 1054; Pittsburg, C. C. & St. L. R. Co. v. Naylor, 3 L. R. A. (N. S.), 473; Pocahontas Collieries Co. v. Rukas Adm'r, 51 S. E. Rep., 449; Dennick v. Central Railroad Co., 103 U. S., 18; Vetaloro v. Perkins, 101 Fed. Rep., 393; Davidson v. Hill, 70 L. J. K. B., 788.

The law imposes a duty upon those operating locomotives over crossings that are habitually used by great numbers of persons to exercise ordinary care to avoid striking those upon or about to enter upon the crossings; and the proof conclusively showed that the crossing upon which the deceased was struck by the backing engine and tender was constantly used at all hours of the day by great numbers of appellant's employes, and that those in charge of the engine failed to use ordinary care to discover the deceased and avoid striking him.  Gulf, C. & S. F. Ry. Co. v. Smith, 87 Texas, 357; Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 620; St. Louis & T. Ry. Co. v. Crosnoe, 72 Texas, 83, 84.

The law presumes that the deceased was in the exercise of ordinary care, and the evidence did not show that he was guilty of negligence in failing to discover the approach of the engine and avoid contact therewith, as a matter of law.  Indeed, the circumstances were such as to excuse him for not discovering the approach of the engine, or at least to make the question one for the jury.  Lee v. I. & G. N. R. R. Co., 89 Texas, 588; International & G. N. R. R. Co. v. DeBajligethy, 28 S. W. Rep., 830.

REESE, ASSOCIATE JUSTICE.—Otto and Wilhelmina Kauffmann,

resident citizens of Germany, bring this action against the Houston & Texas Central Railroad Company to recover damages for the death of their son, Otto Kauffmann, Jr., alleged to have been caused by the negligence of defendant. Among other defenses pleaded by defendant was that of contributory negligence on the part of the deceased, Otto Kauffmann, Jr. From a judgment for plaintiffs for $2,500 defendant presents this appeal.

The undisputed evidence with regard to the accident by reason of which deceased lost his life, establishes the following facts: The accident occurred in appellant's yards in the city of Houston about 7:30 A. M. on the 20th of December, 1903. Otto Kauffmann, Jr. was, at the time, in the employ of appellant at its round house in the City of Houston, and about 7:30 A. M. on the day stated he started from the round house to go to the superintendent's office, a distance of about one hundred yards. Running out from the central depot in Houston are two main tracks, one of which is used for trains going out to the north and west, and the other for trains coming from the same direction, on the lines of the H. & T. C. R. R., the G. H. & S. A. R. R., and the S. A. & A. P. R. R. These tracks are parallel and near together. The one upon which trains go out is the north or "old main" track. That upon which they come in is the south or "new main" track. Going from the round house to the Superintendent's office it is necessary to cross these two tracks, the north or "old main" track first. Near the Superintendent's office there is a plank crossing over these two tracks.

On the morning in question a passenger engine and tender, belonging to appellant, running backwards, the tender in front, was being operated on the north or "old main" track going north, for the purpose of getting a supply of fuel oil. The engine was being operated by an engineer with two others, a fireman and a person to throw switches, in the cab. Just before this engine reached the plank crossing referred to it met a passenger train coming in on the south or "new main" track. The tender struck and, with the engine, ran over the deceased Kauffmann on this plank crossing, about the north edge thereof, killing him. His body was dragged about sixty feet north from the crossing, and when found by those in charge of the engine it was lying between the rails on the north track. No one on the engine saw deceased until after he had been run over. One of the persons on the engine noticed the jar or jolt and looking back saw the body. The engine was stopped in about sixty feet and when the men went back they found the body as stated, with life about extinct. At the place where the accident occurred, and for some distance each way, the tracks were level and straight, with nothing to obstruct the view of the engine from a person on the track, at or in the neighborhood of the crossing. Both tracks are very much used. Deceased had been working at the round house, which is in close proximity to these tracks, since August preceding his death. Deceased was a young man twenty-three years old, of good intelligence and in the full possession of his senses of sight and hearing. At, and in the neighborhood of, the crossing the two tracks were a few feet apart. The evidence does not show the exact distance. At the time of the accident, according to the

only testimony introduced on the subject, that of one of the men on the engine, it was moving at a speed of about four or five miles an hour. All of the men on the engine testify that the bell was kept continually ringing, and there was no evidence to the contrary. The persons on the engine could see the track clearly ahead of them the way they were going, except that the tender obstructed the view of the track by persons in the cab for a distance of about fifty feet from the end thereof, unless they leaned out of the cab window to look.

The only ground of negligence alleged, which the evidence tended to support, is that of failure to keep a reasonable lookout to discover the danger to persons on the track.

The place at which the accident occurred was a much frequented part of appellant's yards in a crowded and busy city and the crossing was in frequent use by persons going to and fro. The circumstances were such as to call for the exercise of a constant lookout from persons moving an engine as this was being moved. None of the men saw Kauffmann before he was struck, none of them could have seen him while he was on the track and within a distance of fifty feet of the end of the tender, without leaning out of the window of the cab, which none of them did. They did nothing more than simply look ahead through the cab windows, although they knew that in that way they could not see the track within fifty feet of the end of the tender. Under the circumstances we think there was sufficient evidence to authorize a finding by the jury that those in charge of the engine were guilty of negligence in failing to keep a reasonable lookout. The evidence tends to show that if they had kept a reasonable lookout they were bound to have seen deceased on the track.

We are of the opinion, however, that the undisputed evidence, as above stated, establishes contributory negligence on the part of the deceased Kauffmann. He was a man of at least ordinary intelligence, in the full possession of his faculties of sight and hearing. At the place where he was struck the track was straight and level. There was nothing to obstruct his view of the approaching engine for a considerable distance, a much greater distance than would have been necessary to insure his absolute safety, at the slow speed at which the engine was moving, or at any ordinary rate of speed, if he had either looked or listened.

The undisputed evidence leads irresistibly to one of two conclusions: either that Kauffmann went upon the crossing and remained there in plain view and hearing of the approaching engine until he was struck, or that he stepped upon the track immediately in front of and in plain view and hearing of the approaching engine and was thus struck and killed, in either case without the slightest precaution to ascertain the presence of the approaching train then in plain view. It is stated in appellees' petition in explanation of Kauffmann's actions in remaining on the track that "just as he was crossing said railroad track it became necessary for him to stop a moment on one of said tracks, which he did, to let a certain train pass; and that while so pausing" he was struck by the tender. There is nothing in the evidence which remotely suggests that it was necessary for him to stop on the track. The statement removes any suggestion which could possibly be enter-

tained that his stopping on the track was other than voluntary on his part. If the noise of the passing passenger train was sufficient to drown the sound of the approaching engine there was the more need for him, in the exercise of ordinary care, to use his sense of sight. If anything it emphasized that duty. (Ry. Co. v. Dean, 76 Texas, 74.)

In the case of International & G. N. Ry. Co. v De Bajligethy, 28 S. W. Rep., 830, cited by appellees, this court says, after detailing the facts with regard to the accident under discussion: "Do these facts so plainly show that by looking the car must necessarily be seen, as to require the inference either that he did not look, or that if he looked he saw the car and went heedlessly on?" The court answers the question in the negative from the circumstance that it was in the night and that the injured man may not have been able to see the car by looking. No such inference can be indulged in the present case. Kauffmann could not have cast the most fleeting glance down the track without seeing the engine. The inference is irresistible that he either did not look, or if he did look, he saw the engine and went heedlessly on. Upon no other possible hypothesis in the remotest degree suggested by the evidence can the accident be accounted for. Upon the issue of contributory negligence the jury should have been instructed to return a verdict for defendant. (Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 304; Galveston, H. & S. A. Ry. Co. v. Bracken, 59 Texas, 73.)

The case of Bennett v. St. Louis Southwestern Ry. Co., (82 S. W. Rep., 333) is very similar in its facts to the case at bar. The trial court instructed a verdict for defendant, upon the issue of contributory negligence on the part of the person killed. The judgment was affirmed by this court, and a writ of error was refused by the Supreme Court.

Appellant also by pleading and evidence raises the issue of the right of appellees, now resident aliens, to bring this suit, and urges upon our consideration the proposition that there being neither pleading nor proof that under the law of their domicile, or by force of any treaty with that country, resident citizens of this State would have such rights in that country, it was not the intention of the Legislature, as expressed in the statute, to confer such rights upon resident citizens of that country. The question has never been decided in this State. Authorities upon the point are conflicting, and as it is not necessary to the decision of this appeal we pretermit discussion or decision of the question here.

We overrule the assignment of error presenting the objection that the amount of damages by the verdict is excessive.

For the error indicated the judgment of the trial court is reversed and judgment here rendered for defendant.

*Reversed and rendered.*

Writ of error refused.